# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDMARK AUTO, INC., an Idaho corporation; CHALFANT CORP., an Idaho corporation, | Case No. 1:15-cv-00520-EJL-CWD |
| **Dealers,** | **ORDER** |
| vs. | |
| ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; UNIVERSAL UNDERWRITERS SERVICE CORPORATION, a Delaware corporation, | |
| **Defendant.** | |

## INTRODUCTION

On February 6, 2018, United States Magistrate Judge Candy W. Dale issued a Memorandum Decision and Order (Dkt. 97) ("MDO") and Report and Recommendation (Dkt. 70, Dkt. 112 ("Report"). (Dkt. 135.) The MDO grants Plaintiffs' Motion to Compel (Dkt. 97) and the Report recommends that Defendants' Motion for Partial Summary Judgment (Dkt. 70) be denied and Plaintiffs' Motion to Amend/ Correct (Dkt. 112) be granted. (Dkt. 135.)

Any party may challenge the Magistrate Judge's proposed recommendation by filing written objections within fourteen days after being served with a copy of the Report. 28 U.S.C. § 636(b)(1)(C). In this case, Defendants filed an Objection to the Report on February 20, 2018 (Dkt. 138); Plaintiffs filed a timely response to that Objection on March

6, 2018 (Dkt. 142); and the matter is now ripe for this Court's consideration. Fed. R. Civ. P. 72; Local Civ. R. 73.1.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id*. Where, however, no objections are filed the district court need not conduct a *de novo* review. Rather, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

## DISCUSSION

The Court has reviewed the objected to portions of the Report *de novo.* The Court has also conducted a review of the entire Report, as well as the record in this matter, for clear error. Finding no error, the Court adopts the Report and its Recommendations.

## BACKGROUND

As a preliminary matter, the Court adopts the factual findings outlined in the Report. However, by way of brief background, the relevant facts are as follows.

The claims at issue arise from a long-running business relationship between two automobile dealers, Edmark Auto, Inc. ("Edmark") and Chalfant Corp. ("Chalfant") (collectively "Dealers") and two insurance companies, Zurich American Insurance Company ("Zurich") and Universal Underwriters Service Corporation ("Universal")

(collectively "Insurers"). Insurers authorized Dealers to offer and sell certain Vehicle Service Contracts ("VSCs") to their customers. VSCs are contracts for extended warranty agreements that cover the repair or replacement of parts due to mechanical breakdown.

VSCs require customers to pay upfront for the extended warranty but permit cancellation before the end of the VSC term. When customers cancelled the VSCs before the end of the VSC term, the customers were entitled to a pro-rated refund for any value left in their extended warranty at the time of cancellation. The parties dispute how they intended to allocate the costs of that refund between Dealers and Insureds.

There are two primary contracts at issue:

1.  the Vehicle Service Contract Dealer Agreement ("**VSC Dealer Agreement**") (Dkt.70-3, Exs. A, D)[1] and

2.  the Dealers Designated Refund Account Addendum ("**DDRA Addendum**") to the VSC Dealer Agreement signed and effective November 1, 1996 (Dkt. 70-3, Exs. B, C).[2]

According to Insurers, the VSC Dealer Agreement and DDRA Addendum are clear and unambiguous. The DDRA Addendum modified the VSC Dealer Agreement and

---

[1] There are two VSC Dealer Agreements: one with Edmark from 1996 (Dkt. 72-2) and the other with Chalfant from 2009 (Dkt. 72-5). The Report notes the only substantive difference between the two agreements, other than the parties, was the addition of an arbitration clause in the 2009 version. Therefore, the VSC Dealer Agreements are analyzed together.

[2] There are three DDRA Addendum agreements. (Dkts. 72-3, 72-4.) The Report notes that the DDRA Addenda with Edmark and Chalfant are distinct agreements but contain the exact same terms, other than the parties. Therefore, the DDRA Addenda are analyzed together.

provided a mechanism for the Dealers to pay a portion of the customers' refunds upon cancellation. (Dkt. 70-1, pp. 2-3.)

Under the DDRA Program, Dealers paid Insurers $80 upon the sale of each VSC. (Dkt. 70-1, p. 3.) This $80.00 payment was referred to as the "Dealers Refund Payment." (*Id.*) The collective sum of all $80.00 payments remitted by Dealers was referred to as the "Dealers Designated Refund Account" ("DDRA"). (*Id.*) When a VSC was cancelled, Insurers allege that they paid the entire amount of the cancellation refund, "and the amount of the dealers' share was subtracted from the DDRA fund balance on the Defendants' books." (*Id.*)

The Dealers referred to their portion of the refunds as dealer "charge backs." (Dkt. 52, ¶¶ 19, 24.) The Dealers referred to the DDRA program with Insurers as the "No Charge Back Program." (*Id.* at ¶¶ 1, 26.) The Dealers understood that Insurers could change the amount of the Dealers Refund Payment at any time and that Insurers would monitor and administer the DDRA fund so that it would cover all anticipated liabilities from "charge backs." (*Id.*)

On April 21, 2015, Insurers terminated the DDRA Addendum on the basis that the DDRA fund balance was "in a significant deficit position" and "no funds exist from which to make any distribution." (Dkt. 72-8.)[3] Defendants seek repayment of hundreds of thousands of dollars in refund payments on the basis that the DDRA Addendum and VSC

---

[3] By September 2015, Insurers reported that Dealers owed them $231,122.71 representing the negative deficiency balance in the DDRA. (Dkt. 56, p. 10.) As Insurers continue to pay cancellation refunds, this claimed deficiency grows. *Id.*

Dealer Agreement clearly and unambiguously provide that Dealers are obligated to pay or reimburse Defendants for any and all deficiencies. (*Id.*)

The Dealers argue that the contracts are ambiguous and, as a whole, support their understanding that: (1) Insurers had to pay all chargebacks for VSC cancellations after 90 days of sale from the DDRA if the dealership paid the Dealers Refund Payment and (2) the DDRA would never be in deficit if Universal properly established and managed the account. (Dkt. 91, p. 7.) Accordingly, Dealers refused to pay the alleged negative deficiency balance in the DDRA and, instead, filed suit against Insurers. (Dkt. 1.)

Dealers make seven claims against the Insurers: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing; (3) fraud/ fraudulent concealment, (4) unfair business practices, (5) breach of fiduciary duty, (6) unjust enrichment, and (7) fraud in the inducement. (Dkt. 52.) Insurers filed a Counterclaim with four claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) unjust enrichment, and (4) accounting. (Dkt. 56.)

On July 20, 2017, Insurers filed the instant summary judgment motion. (Dkt. 70.) Fundamentally, Insurers argue that this is a basic contract dispute and that, pursuant to the plain and unambiguous language of the VSC Dealer Agreement and DDRA Addendum, Dealers owe them for the growing deficiency in the DDRA. (Dkt. 70-1.)

In contrast, Dealers argue that the VSC Dealer Agreement and DDRA Addendum are ambiguous and reasonably subject to their interpretation. (Dkt. 91.) Dealers further argue that Insurers did not manage the DDRA consistent with applicable standards and Insurers intentionally misled them into believing that Insurers were administering the

Dealer Refund Payments in the Dealer's Designated Refund Account in a manner that would cover all of the Dealers' future liability for canceled VSCs. (*Id.*)

On February 6, 2018, the Magistrate Judge issued the Report denying Insurers' summary judgment motion in all respects and finding substantial evidence in the record to support Plaintiffs' punitive damages claim. Insurers allege the Report is flawed in six respects, because the Magistrate Judge:

> (1) did not apply the correct standard in finding the contract is ambiguous;
>
> (2) considered extrinsic evidence prior to finding the contracts were ambiguous;
>
> (3) interpreted the contracts in an unreasonable manner and in conflict with the actual terms of the contracts;
>
> (4) erred in recommending that Dealers' unjust enrichment claim and disgorgement remedy may proceed in light of the enforceable contracts;
>
> (5) erred in analyzing Dealers' fraud claim by considering inadmissible evidence and finding support for the justifiable reliance element of the claim; and
>
> (6) erred in analyzing Dealers' motion to amend by considering inadmissible evidence and failing to find the punitive damages claim "reasonably disputed" in light of the "substantial evidence" supporting Insurers' claims and defenses.

(Dkt. 138, pp. 2-3.)

Each of these arguments is considered and ultimately rejected as further explained below. The Magistrate Judge found genuine disputes of material fact for the jury to resolve, including the proper interpretation of the VSC Dealer Agreement and the DDRA

Addendum. The Court finds no error in the Report's analysis of the law or the application

of the law to the facts in the record.

## ANALYSIS

**1.      The Report Correctly Found the Contracts Are Ambiguous without Consulting Extrinsic Evidence and Interpreted the Contracts in a Reasonable Manner.**

Insurers argue that the VSC Dealer Agreement and DDRA Addendum are clear and

unambiguous. Insurers argue, as a matter of law, that the only reasonable interpretation of

these contracts is as follows:

> (1) the DDRA Addendum modifies but does not replace the VSC Dealer Agreement;
>
> (2) the DDRA Addendum requires Dealers to pay portions of refunds for canceled VSCs from the DDRA Refund Account; Dealers' share of the VSC cancellation refunds were to be paid from DDRA Refund Account unless the DDRA Refund Account became insolvent; and, if the DDRA Refund Account contained less funds than the Dealers' obligations, then Dealers were obligated to pay the deficiency;
>
> (3) the DDRA Addendum did not require that Insurers deposit the $80.00 Dealer Refund Payments into a specific bank account; and
>
> (4) upon termination of the DDRA Addendum, the rights and obligations of the parties would be as set forth in the VSC Dealer Agreement, with the exception of paragraph 2(c) of the DDRA Addendum, which would remain in effect.

(Dkt. 70-1.) In contrast, the Dealers argue the contract is ambiguous and with extrinsic

evidence, a trier of fact could reasonably find: (1) Insurers had to pay all chargebacks for

VSC cancellations after 90 days of sale provided the Dealers paid the required $80.00 fee

per warranty and (2) the DDRA Refund Account would never be in deficit if it had been properly managed. (Dkt. 91, p. 7.)

**A.** ***The Magistrate Judge Applied the Correct Legal Standards to the Issue of Contract Interpretation and Did Not Consult Extrinsic Evidence.***

The Magistrate Judge found, "the DDRA Addendum as [a] whole is reasonably subject to conflicting interpretations and is ambiguous on its face." (Dkt. 135, p. 11.) The Magistrate Judge further found, "[t]he Court need not consider extrinsic evidence to make this finding." (*Id.*)

Notwithstanding these explicit statements, Defendants argue the Magistrate Judge improperly considered extrinsic evidence. Defendants' argument rests on three alleged examples of improper consideration of extrinsic evidence.

First, in finding Section 2(c) was ambiguous, the Magistrate Judge stated, "[a]lthough this section appears to indicate the Dealer is obligated to pay any deficiency if the obligation, as determined in Section 2(b) of the DDRA Addendum, exceeded the amount in the [DDRA], it is unclear whether that determination should have been made on a case-by-case basis (*i.e.* refund-by-refund or some other periodic determination) by the Insurers in administration of the account." (Dkt. 135, p. 15.)

Second, in finding Section 2(c) ambiguous, the Magistrate Judge stated, "the question of whether there should have been a deficiency at all is raised by the Dealers through their assertion that the Insurers had a duty to manage and monitor the funds and the account in the Dealers' best interest and according to industry standards." (*Id.* at p. 16.)

Third, when determining whether Section 3 of the DDRA Addendum required Defendants to deposit the $80 Dealer Refund Payments into a specific bank account, the Magistrate Judge stated that this question "implicates others, including whether a potential fiduciary relationship or the implied covenant of good faith and fair dealing required the Insurers to manage the [DDRA] for the Dealers' benefit- consistent with relevant industry standards." (*Id.*)

Contrary to Defendants' arguments, none of these statements reflects the improper consideration of extrinsic evidence. Rather, the Magistrate Judge merely noted that the contract itself leaves certain issues unaddressed. It was entirely appropriate for the Court to identify these unresolved issues and, by doing so, did not improperly consult extrinsic factual evidence regarding the parties' intent.

Moreover, the implied covenant of good faith and fair dealing exists in every contract. "In every contract there is an implied covenant of good faith and fair dealing.'" *Silicon Intern. Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 552, 314 P.3d 593, 607 (2013) (quoting *Wash. Fed. Sav. v. Van Engelen*, 153 Idaho 648, 656, 289 P.3d 50, 58 (2012)). The Magistrate Judge did not improperly consult extrinsic evidence concerning the contract's meaning by considering this legal issue; she was simply recognizing the legal requirement that the "parties must perform in good faith *the obligations imposed by their agreement.*" (*Id.*) (emphasis in original) (quoting *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991)).

This same analysis holds true for fiduciary obligations. The existence of a fiduciary duty and its impact on the Insureds' duties to the Dealers provides additional legal context

for interpreting the contract terms at issue. It was entirely appropriate for the Magistrate Judge to identify and consider this legal context when attempting to apply the instant contractual language to the parties' dispute and, by doing so, the Magistrate Judge did not improperly consult extrinsic evidence.

### B. The Magistrate Judge's Interpretation of the Contract Was Reasonable.

The Magistrate Judge correctly found the VSC Dealer Agreement and DDRA Addendum were ambiguous as applied to the facts of this case. In doing so, the Magistrate Judge correctly construed the contract as a whole, rather than focusing on isolated provisions out of context.

"The primary aim in interpretation of all contracts is to ascertain the mutual intent of the parties at the time the contract was made." *Opportunity, L.L.C. v. Osserwarde*, 136 Idaho 602, 607, 38 P.3d 1258, 1263 (2002). "In determining the intent of the parties, the Court must view the contract as a whole." *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2004).

When the contract is unambiguous, the intent of the parties can be ascertained from the language of the agreement. *Opportunity, L.L.C.*, 136 Idaho at 607, 38 P.3d at 1263. ("If possible, the intent of the parties should be ascertained from the language of the agreement as the best indication of their intent.") A contract is ambiguous if the intent of the parties cannot be ascertained from the language of the agreement and "intent becomes a question of fact to be determined in light of extrinsic evidence." *Id.* "Whether a contract is ambiguous or unambiguous is a question of law." *Pocatello Hosp., LLC v. Quail Ridge Medical Investor, LLC*, 156 Idaho 709, 720, 330 P.3d 1067, 1078 (2014).

Insurers take issue with three specific findings in the Report: (1) there is a "circular ambiguity" in the terms of the DDRA Addendum; (2) the DDRA Addendum does not clearly require Dealers to pay their portion of refunds; and (3) the Dealers are not obligated to pay the identified deficiency under the plain language of Section 2(c). (Dkt. 138, pp. 7-11.) As discussed more fully below, each of these findings is supported by a reasonable interpretation of the contracts as a whole.

*(1)     The Contract Must Be Read as a Whole.*

The central is whether the VSC Dealer Agreement and DDRA Addendum are ambiguous as applied to the facts of this case. The Court is reluctant to walk through the isolated provision-by-provision interpretation urged by Insurers. Reviewing the contract as a whole, in light of the parties' respective breach of contract claims, the Court finds the DDRA Addendum is ambiguous and there are genuine disputes of material fact concerning the parties' intent that must be decided by the jury.

Fundamentally, the Court cannot say, as a matter of law, that Insurers were allowed to manage the DDRA in a manner that allowed Dealers to be liable for hundreds of thousands of dollars in deficits to be incurred on an on-going and unlimited basis without notice to Dealers. Likewise, the Court cannot say, as a matter of law, that the Dealerships' exposure was limited to $80.00 per chargeback for VSC cancellations and the DDRA could never be in a deficit position. Clearly the parties intended that the "the total fees in Dealer's Designated Refund Account accurately reflect the amount of Dealer's future liabilities for refunds under Section 2(b) of this program and are being transferred to Company for this

specific purpose." (Dkt. 72-3, p. 2). At the same time, the DDRA provides a mechanism for Insurers to collect "any deficit" that may arise. (*Id.*)

This fundamental ambiguity in the DDRA Addendum creates a genuine dispute of material fact. Only a jury can resolve the parties' competing interpretations of the DDRA Addendum.

> (2)    There is a "Circular Ambiguity" in the Terms of the DDRA Addendum.

Insurers take issue with the Report's specific finding that there is a circular ambiguity in the DDRA Addendum. This finding was made in response to Insurers' request that the Court find, as a matter of law, that the DDRA Addendum modifies but does not replace the VSC Dealer Agreement.

As a preliminary matter, it is unclear why Insurers request this partial ruling on summary judgment. Nevertheless, the Court has reviewed the Report in light of Insurer's Objections and finds the Report correctly denied summary judgment on this issue: it is simply unclear if the DDRA Addendum modifies the VSC Dealer agreement, the VSC Agreement modifies the DDRA Addendum, or if the two contracts modify each other.

First, the DDRA Addendum clearly states that it "is attached to and made part of" the VSC Dealer Agreement and "shall be referred to as Dealers Designated Refund Account Program (Program)." (Dkt. 72-3, p. 2.) Second, under the DDRA Addendum, the parties agreed to replace Section 15 of the VSC agreement with the DDRA Addendum in its entirety. "[I]t is agreed . . . that Section 15 of [the VSC Dealer Agreement] . . . is deleted and the following substituted therefore." (*Id.*) Third, the DDRA Addendum at Section 7

states that, if the DDRA Addendum is terminated, then Section 15 of the VSC Dealer Agreement "shall replace the provisions of this addendum, with the exception that Section 2(c) of this addendum will continue to apply." (*Id.* at p. 3.) Fourth, there is an obvious ambiguity created by the substitution of the DDRA for Section 15.

Section 15 of the VSC Dealer Agreement is a termination provision. (Dkt. 72-2, p. 6.) It does not address liability for customer refunds. The customer refund provision is in Section 4.H of the VSC Dealer Agreement. (Dkt. 72-2, p. 4.) That provision states that the Dealer agrees:

> That in the event of cancellation or other reduction in the purchase price of a Service Contract, to refund to contractholder or to lienholder, if applicable, the unearned purchase price. [Insurer] shall return to Dealer, that portion of the refund calculated by dividing: (1) the amount of the remit less any amounts paid to Dealer or any of its employees or assigned from such remit by (2) purchase price of the service contract. From the amount calculated above, [Insurer] shall deduct where applicable any cancellation or service fee.

(*Id.*)

In contrast, under the DDRA Addendum, the obligations of the Insurer and Dealer for VSC refunds depends on whether the refund occurs within the first 90 days of the VSC term. If the cancellation occurs within 90 days, Section 2(a) applies and the Insurer is charged with reimbursing the Dealer as follows:

> Dealer and [Insurer] agree that in the event of cancellation or other reduction in the purchase price of a Service Contract during the first 90 days of the term of the contract, to refund to contractholder or to lienholder, if applicable, the unearned purchase price. [Insurer] shall return to Dealer, that portion of the refund of unearned purchase price calculated by multiplying the refund amount by: (1) the amount of the remit

less any amounts paid to Dealer or any of its employees or assigned from such remit; divided by (2) purchase price of the service contract. From the amount calculated above, Company shall deduct where applicable any cancellation or service fee.

(*Id.*) However, if the cancellation occurs after 90 days, Section 2(b) applies and the Dealer is charged with reimbursing the Insurer as follows:

Dealer and [Insurer] agree that in the event of cancellation of a Service Contracts after the first 90 days of the term of the contract, refunds shall be paid by [Insurer]. The portion of such refund to be deducted from 'Dealers Designated Refund Account' as follows:

A portion of each refund of unearned purchase shall be calculated by multiplying the refund amount by: (1) The amount of the remit less any amounts paid to dealer or any of its employees or assigned from such remit; divided by (2) the purchase price of the service contract. From the amount calculated above, [Insurer] shall deduct where applicable any cancellation or service fee.

The remaining portion of the refund due under this provision shall be subtracted from "Dealer's Designated Refund Account."

(*Id.*)

Thus, as a general matter, there is a fundamental conflict between the VSC Dealer Agreement and DDRA Addendum with regard to how the VSC refund program is supposed to work. This ambiguity cannot be resolved without reference to extrinsic evidence of the parties' intent. Moreover, the Magistrate Judge correctly found a circular ambiguity in the terms of the DDRA Addendum, which both replaces Section 15 of the Dealer Agreement and indicates that Section 15 of the VSC Dealer Agreement replaces the terms of the DDRA Addendum- with the exception of section 2(c) upon termination.

*(2) Section 2(c) of the DDRA is Ambiguous as a Matter of Law.*

Defendants take issue with the Report's finding that Section 2(c) is ambiguous as a matter of law. Defendants argue that Section 2(c) clearly and unambiguously: (1) obligates Dealers to pay any and all deficiencies and (2) is the only DDRA Addendum provision that survives post-termination.

The Magistrate Judge correctly found Section 2(c) is ambiguous as a matter of law precluding summary judgment as Defendants request. First, Section 2(c) is ambiguous on its face. Second, Section 2(c) explicitly references Section 2(b) as well as the "Dealer's Designated Refund Account." Thus, a reasonable juror could find that Section 2(c) necessarily incorporates Sections 1 and 2(b) before and after termination.

Section 2(c) states:

> If the amount remaining in Dealer's Designated Refund Account is less than Dealers obligation as determined in Section 2(b), Company will charge and Dealer will be obligated to pay Company any deficiency. Company also has the authority to offset any deficiency to Company under Section 2(b), from any other amounts owed by Company to Dealer.

(*Id*. at p. 3.) Based, in part, on this provision, Insurers argue that Dealers are "always liable for their share of VSC refunds whether that money came from the DDRA Account, or whether that money came out of Plaintiffs' own pocket if there were no funds remaining in the DDRA Account." (Dkt. 138, p. 10.)

The Court finds ambiguities in the Contract as a whole that preclude this interpretation of the Contract as a matter of law. While this provision clearly appears to render Dealers liable for some form of a deficiency, the plain language of Section 2(c) incorporates Sections 1 and 2(b), which both operate as limits on Insurers' management of the DDRA and, thus, Dealers' liability for any deficits that occurred.

Section 2(c) refers to Section 2(b) and the "Dealer's Designated Refund Account" and cannot be interpreted in isolation from Section 2(b) or Section 1. Section 2(b) provides that Dealers' portion of the refund would come from the DDRA. (*Id.*) Under Section 1, the "Dealer's Designated Refund Account" is identified and defined. (Dkt. 72-3, p. 2.)

Section 1 sets the Dealers Refund Payment at $80.00 to "be added to dealers remit" and to "be designated for the payment by Insured . . . of Dealer's refund liability under Section 2(b)" of the DDRA Addendum. (*Id.*) The "Dealer's Designated Refund Account" is the sum of the Dealers Refund Payments. (*Id.*)

Most importantly, Section 1 reflects that the parties clearly intended "that the total of all fees in Dealer's Designated Refund Account accurately reflect the amount of Dealer's future liability for refunds under Section 2(b) of this program and are being transferred to Company specifically for this purpose." (*Id.*) Further, under Section 4, the Dealer could increase or decrease the remit at any time. (*Id.* at p. 3.)

Thus, in context, it is not clear, as a matter of law, that Section 2(c) clearly and unambiguously allows Insurers to collect hundreds of thousands of dollars in deficiencies aggregated over time. A reasonable juror could conclude that such a result was not consistent with the parties' intent at contract formation as explicitly indicated in Section 1.

Moreover, a reasonable juror could find that such a result is not consistent with Insurers' implied duties, including the duty of good faith and fair dealing or fiduciary duties, that would limit how the DDRA was managed.

Insurers also take issue with the Magistrate Judge's finding that the parties' post-termination obligations are not clearly and unambiguously limited to Section 2(c). As discussed *supra*, Section 7 of the DDRA Addendum states that if the DDRA Addendum is terminated, then Section 15 of the Dealer Agreement replaces the DDRA Addendum with the exception of Section 2(c) which will continue to apply. (Dkt. 72-3, p. 3.) However, as previously discussed, the DDRA contains a circular ambiguity and the express exception for Section 2(c) creates ambiguity concerning the on-going application of Sections 1 and 2(b). At the very least, Sections 1 and 2(b) operate as a potential limit to the over-all deficiency Insurers identify ostensibly pursuant to Section 2(c).

In short, the Magistrate Judge: (1) correctly concluded that Section 2(c) of the DDRA Addendum is ambiguous in and of itself and (2) properly rejected Insurers' arguments regarding its application as a matter of law. Extrinsic evidence of the parties' intent is required to apply these contracts to the facts at issue.

## 2. The Report Correctly Denied Summary Judgment on Dealers' Unjust Enrichment Claim and Disgorgement Remedy.

The Court adopts the Report's recommendation that summary judgment be denied on the Dealers' claims for unjust enrichment. At this stage in the proceedings, it is not clear that the claims fail as a matter of law and Plaintiffs may proceed with alternative theories of relief.

As the Report correctly notes, under Idaho law, parties generally may not recover under a theory of unjust enrichment if there is an express contract in place that covers the same subject matter. *Blaser v. Cameron*, 121 Idaho 1012, 1017, 829 P.2d 1361, 1366 (Ct. App. 1991.) However, there are exceptions to the rule including: (1) if the express contract is found to be unenforceable and (2) if the claim is pursued against a party that was not a party to the contract. *Id.*; *In re Estate of Boyd*, 134 Idaho 669, 673, 8 P.3d 664, 668 (2000).

Plaintiffs have alleged a fraud in the inducement claim and also point out that Defendant Zurich was not a signatory to the contracts at issue. Moreover, while Defendants argue that the contract applies exclusively to the dispute; they too have made an unjust enrichment claim. (Dkt. 56.)

Thus, the enforceability of the contract remains at issue. Accordingly, it would be premature to dismiss Plaintiffs' unjust enrichment claim at this time. *See Thomas v. Thomas*, 150 Idaho 636, 249 P.3d 829 (2011). (holding district court's dismissal of unjust enrichment claim premature because parties disputed enforceability of contract).

**3.     The Report Correctly Analyzed Dealers' Fraud Claim.**

In their Objection, Insurers take issue with the Magistrate Judge's finding that there are genuine disputes of material fact precluding summary judgment on Dealers' fraud claim. (Dkt. 138, p. 14.) Specifically, Insurers argue that the Magistrate Judge did not address the absence of justifiable reliance and relied upon inadmissible evidence. (*Id.*)

The Court adopts the Report's recommendation. First, Insurers concede they did not raise this argument regarding justifiable reliance in their opening summary judgment brief. (Dkt. 104, p. 2.) Rather, they raised it in response to Dealers' opposition brief. (*Id.*)

Accordingly, Defendants waived any argument regarding justifiable reliance. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.") This Court will not consider an issue that was not properly raised before the Magistrate Judge and further notes that justifiable reliance is not typically an issue appropriately resolved on summary judgment. *See Mannos v. Moss*, 143 Idaho 927, 932, 155 P.3d 1166, 1171 (2007).

Second, the Report did not rely on conclusory arguments or inadmissible evidence as Insurers contend. (Dkt. 138, p. 15.) The undersigned has reviewed the Report's analysis of this issue as well as the punitive damages claim. (Dkt. 135, pp. 20-22, 26-29.) In addition, the undersigned has reviewed the Insurers' Objections. (Dkt. 138.) The Court finds that the Magistrate's findings are appropriate.

On summary judgment, the Court takes the facts as alleged by the non-moving party and makes every reasonable inference from those facts. *Scott v. Harris*, 550 U.S. 372, 379 (2007) ("courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion'")(quoting *United States v. Deibold, Inc.*, 369 U.S. 654, 655 (1962).). Thus, while Insurers' disagree with the Report's conclusions, the Court does not find the Magistrate Judge's analysis was in error. It was appropriate in light of the standard of review as well as the record as discussed more fully *infra* with regard to Dealer's motion to amend to add a punitive damages claim.

**4.     The Report Correctly Analyzed Dealers' Motion to Amend.**

The Report recommends that the Court grant Dealers' motion to amend to add a claim for punitive damages. Insurers' object to the Report's recommendation on two bases:

(1) "the Magistrate [Judge] erred in considering inadmissible evidence" and (2) "[t]here is substantial evidence supporting Defendants' claims and defenses." (Dkt. 138, pp. 17, 18.) Neither argument is persuasive and the Court adopts the Report's recommendation.

As a preliminary matter, Insurers' objections reflect a fundamental disagreement with Dealers' theory of the case and Insurers' perspective concerning the primacy and clarity of the contract at issue. Nonetheless, the Magistrate Judge correctly found that there is evidence to support Dealers' theory of the case and that evidence is both sufficient to raise material disputes of fact precluding summary judgment and sufficient to allow Dealers to add a claim for punitive damages.

Again, the Magistrate Judge did not consider inadmissible evidence. The Magistrate Judge rejected Insurers' objections to Dealers' proffered testimony. Further, the record provided sufficient support to allow the motion to amend.

At trial, Dealers will have to prove by "clear and convincing evidence" that Insurers engaged in "oppressive, fraudulent, malicious or outrageous conduct." I.C. § 6-1604(1). However, to amend the complaint to add a claim for punitive damages, Dealers must show a "reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." I.C. § 6-1604(2).

At this point, the Court has to agree with the Magistrate Judge: the record demonstrates a "reasonable likelihood" that Dealers' can meet this burden at trial. This includes expert opinion testimony that the Insurers' conduct constitutes "an extreme deviation from reasonable standards." (Dkt. 91-8; Dkt. 91-10, pp. 4-6). It also includes testimony from the Insurers' own witnesses who agree that material information was not

shared with Dealers. (Dkt. 112-5, p. 7; Dkt. 112- 10, pp. 7, 8.) Finally, it includes the evidence outlined in the Appendix A to Insurers' Response to Defendants' Objections. (Dkt. 142, Appx. A.)

In short, the Court will allow Plaintiffs to amend the complaint and add a punitive damages claim. However, the undersigned reserves the right to determine whether the punitive damages claim, and any other claim, will be submitted to the jury at trial.

## CONCLUSION

In sum, the Court finds no error in the Report and adopts the recommendations contained therein.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1. Defendants' Motion for Partial Summary Judgment (Dkt. 70) is **DENIED** and

2. Plaintiffs' Motion to Amend (Dkt. 112) is **GRANTED.**

DATED: March 16, 2018

Edward J. Lodge
United States District Judge