Erik F. Stidham, ISB No. 5483
Kevin C. Braley, ISB No. 6948
Jennifer M. Jensen, ISB No. 9275
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho  83701-2527
Telephone:   (208) 342-5000
Facsimile:   (208) 343-8869
E-mail:    efstidham@hollandhart.com
           kbraley@hollandhart.com
           jmjensen@hollandhart.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| EDMARK AUTO, INC.,  an Idaho corporation; CHALFANT CORP., an Idaho corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, and UNIVERSAL UNDERWRITERS SERVICE CORPORATION, a Delaware corporation,<br><br>Defendants. | Case No.  1:15-CV-00520-EJL<br><br>**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Edmark Auto, Inc. ("Edmark Auto") and Chalfant Corp. ("Chalfant Corp.") (collectively "Edmark/Chalfant Dealerships") by and through their attorneys, Holland & Hart LLP, hereby amend their Complaint against defendants Zurich American Insurance Company ("Zurich") and Universal Underwriters Service Corporation ("Universal") (collectively "Zurich Defendants" or "Defendants") as follows:

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 1

## NATURE OF THE ACTION, PARTIES, JURISDICTION, AND VENUE

1.      From at least 1996 through May of 2015, the Zurich Defendants misrepresented facts to and concealed facts from the Edmark/Chalfant Dealerships.  The Zurich Defendants made misrepresentations and concealed facts so that the Edmark/Chalfant Dealerships would sell the Zurich Defendants' finance and insurance products ("F&I Products").  To convince the Edmark/Chalfant Dealerships to sell their F&I Products, the Zurich Defendants promised the Edmark/Chalfant Dealerships would be enrolled in a special "No Charge Back Program" which would protect the dealerships from significant fees and costs relating to customer cancellations. In truth, the Zurich Defendants knowingly or recklessly misrepresented the "No Charge Back Program".  The Zurich Defendants  never intended to and never did live up to the representations and contractual obligations relating to the "No Charge Back Program".  Once the Edmark/Chalfant Dealerships were enticed into selling their F&I Products, the Zurich Defendants concealed the misrepresentations and wrongdoing until April or May of  2015.  As a result, the Zurich Defendants (1) caused the Edmark/Chalfant Dealerships to forgo relationships with competitors of Zurich and Universal and improperly procured tens of millions of dollars in revenue from the work of the Edmark/Chalfant Dealerships performed. and (2) stuck the Edmark/Chalfant dealerships with substantial liabilities and other significant damages.

2.      Edmark Auto is a corporation organized and existing under the laws of the state of Idaho, with its principal office and place of business in Nampa, Idaho.

3.      Chalfant Corp. is a corporation organized and existing under the laws of the state of Idaho, with its principal office and place of business in Boise, Idaho.

4.      On information and belief, Defendant Zurich is organized under the laws of the state of New York, with its principal office and place of business at 1400 American Lane, Schaumburg, Illinois.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 2

5.     On information and belief, Defendant  Universal is organized and existing under the laws of the state of Missouri, with its principal office and place of business 1400 American Lane, Schaumburg, Illinois.

6.     At all times relevant to this lawsuit, Zurich and its employees have held themselves out to the Edmark/Chalfant Dealerships as agents and/or the alter egos for Universal.

7.     On information and belief, Zurich and Universal are agents or alter egos for one another.  Universal has no employees; all actions take on behalf of Universal are performed by Zurich employees.

8.     From the perspective of the Edmark/Chalfant Dealerships, there is no distinction between Zurich and Universal; Zurich and Universal act as a single, indistinct entity.

9.     The Edmark/Chalfant Dealerships conduct business in Ada County and Canyon County, Idaho.  Because a written agreement relating to the "No Charge Back Program" was entered in Canyon County, and because the wrongful conduct and impact of that wrongful conduct occurred in and around Canyon County,  jurisdiction and venue were proper in the originally-filed  Court pursuant to Idaho Code §§ 1-705 and 5-504.

10.    Universal removed this action to the United States District Court for the District of Idaho on November 3, 2015, pursuant to 28 U.S.C. § 1441(a).

11.    This Court has subject matter jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

## GENERAL ALLEGATIONS

12.    The Zurich Defendants are companies within Zurich Insurance Group Ltd., one of the largest public companies in the world.

13.     The Zurich Defendants develop and sell F&I Products including vehicle service contracts (also known as "VSCs" or "extended warranties"), limited warranty contracts, guaranteed auto protection contracts, maintenance contracts, road hazard tire and wheel contracts.  The Zurich Defendants' F&I Products insure customers against liability under various circumstances where maintenance, repair, or replacement of a vehicle is required.  The F&I Products are a very lucrative source of revenue for the Zurich Defendants.

14.     The Zurich Defendants sell their F&I Products by entering into relationships which car dealerships which, in turn, sell the Zurich Defendants' F&I Products to the dealerships' customers at the time the customer is purchasing a new or used car.

15.     The Zurich Defendants compete with other sellers of F&I Products for relationships with dealerships.

16.     At all times relevant to this lawsuit, the Edmark/Chalfant Dealerships operated various automobile dealerships engaged in the business of selling new and used cars.

17.     To remain competitive, the Edmark/Chalfant Dealerships needed to offer their customers the opportunity to buy extended warranties and other F&I Products on the cars they sell.  So that they can offer extended warranties, the Edmark/Chalfant Dealerships must enter into an agreement with a qualified seller of F&I Products.

18.     As the dealerships retain a portion of the sales price of extended warranties and other F&I Products, the sale of extended warranties is a significant part of car dealerships' business.

19.     Customers can cancel their purchase of an extended warranty, entitling the customer to a refund of all or a portion of the purchase price.  The costs and liabilities associated with customer cancellations of extended warranties and other F&I Products ("charge backs") is a

major concern for dealerships and is a material issue when dealerships negotiate with sellers of F&I Products, like the Zurich Defendants.

20.     The issue of "charge backs" was a material issue when the Zurich Defendants negotiated with and convinced the Edmark/Chalfant Dealerships to sell the Zurich Defendants' F&I Products.

21.     Relevant to this lawsuit, the Edmark/Chalfant Dealerships sold the Zurich Defendants' F&I Products from 1996 through early 2016.

22.     In 1996, Universal entered into a Vehicle Service Contract Dealer Agreement ("Edmark Dealer Warranty Agreement") which allowed Edmark Auto to offer extended warranties to customers.  In 2009, Universal entered into a Vehicle Service Contract Dealer Agreement with Chalfant Corp. ("Chalfant Dealer Warranty Agreement") which allowed Chalfant Corp. to offer extended warranties to customers.  At or around the same times, other dealerships owned by Edmark Auto and Chalfant Corp. also agreed to sell the Zurich Defendants' other F&I Products and to obtain certain types of insurance for its dealerships from Zurich.

23.     Under the Edmark Dealer Warranty Agreement and the Chalfant Dealer Warranty Agreement (collectively "Dealer Warranty Agreements"),  if a customer cancelled or terminated an extended warranty, the customer would receive a refund covering the remaining, unused, portion of the extended warranty.  A refund would be owed under certain circumstances if a customer sold the car during the warranty period.

24.     Under the Dealer Warranty Agreements, Universal and the Edmark/Chalfant Dealerships were each liable for portions of the cost of the refund paid to the customer.  The Edmark/Chalfant Dealerships' portion of the refund was referred to as a dealer "charge back."

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 5

25.     The liability associated with "charge backs" under the Dealer Warranty Agreements was a significant, material concern for the Edmark/Chalfant Dealerships.

26.     To address concerns regarding the "charge backs", Zurich Defendants marketed a "No Charge Back Program" to Edmark Auto in 1996 and to Chalfant Corp. in 2009.  The Zurich Defendants misrepresented that the "No Charge Back Program" would be managed so that the Edmark/Chalfant Dealerships would not be exposed to any liability for reasonably anticipated liabilities.  Under the "No Charge Back Program", the Zurich Defendants represented the Edmark/Chalfant Dealerships were to pay an amount specified by the Zurich Defendants at the time the extended warranty was sold and that amount would be placed in a reserve account managed by the Zurich Defendants ("Refund Account").  It was represented to the Edmark/Chalfant Dealerships that the Zurich Defendants would monitor and administer this special reserve account and program so that it would cover all anticipated liabilities from "charge backs."

27.      Zurich Defendants determined, at their sole discretion, the amount the Edmark/Chalfant Dealerships were required to remit for each warranty to the Refund Account.

28.     Zurich Defendants determined the total amount the Edmark/Chalfant Dealerships were required to remit to the Refund Account.

29.     Zurich Defendants promised that under the "No Charge Back Program" the remitted funds would be kept by Universal, in trust, in the Refund Account.

30.     Zurich Defendants further promised that whenever the Edmark/Chalfant Dealerships were obligated to pay to the customer a share of a refund, the Zurich Defendants would cover the Edmark/Chalfant Dealerships' share with money withdrawn from the Refund Account.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 6

31.     Zurich Defendants promised to manage the Refund Account and, if necessary, adjust the amount remitted from each sale of an extended warranty so the Refund Account would be sufficient to cover the cost of future "charge backs", the portion of the customer refund to be paid by the Edmark/Chalfant Dealerships.

32.     Zurich Defendants had the sole and full authority to adjust unilaterally the amount remitted.

33.     Zurich Defendants had the sole and full authority to control the Refund Account.

34.     Zurich Defendants were responsible for monitoring the Refund Account.

35.     Zurich Defendants were responsible for providing the Edmark/Chalfant Dealerships with periodic reports regarding the Refund Account.

36.     Because Zurich Defendants represented the program would ensure that all of the Edmark/Chalfant Dealerships' current and future liability related to refunds were covered by the Refund Account, Zurich Defendants referred to the program as the "No Charge Back Program".

37.     Based on the representations and assurances made by Zurich Defendants, the Edmark/Chalfant Dealerships signed an agreement implementing the "No Charge Back Program".  In doing so, the Edmark/Chalfant Dealerships relied on the Zurich Defendants' expertise.  In particular, the Edmark/Chalfant Dealerships relied on the Zurich Defendants' promises, including, but not limited to, promise to (1) manage the "No Charge Back Program", (2) created a Refund Account for each dealership, (3) analyze and calculate the likely amount of future charge backs, (4) manage the Refund Account, and (5) determine and adjust, as needed, the appropriate amount that should be remitted from each customer warranty to ensure the Refund Account was adequate.

38.     The Zurich Defendants represented that through their management of the "No Charge Back Program" that "the total of all fees in [Refund Account] accurately reflect the amount of the [Edmark/Chalfant Dealerships'] future liabilities".

39.     The first written agreement implementing the "No Charge Back Program" was signed in 1996.

40.     Upon signing the agreement, Edmark Auto began to remit funds in the amounts designated by the Zurich Defendants from each sale of an extended warranty.

41.     Edmark Auto met all of its obligations under the "No Charge Back Program".

42.     After 1996, Edmark Auto and Chalfant Corp. acquired additional dealerships. Each of these dealerships was brought within the "No Charge Back Program."  By 2010, all dealerships owned by Chalfant Corp. and a new dealership owned by Edmark Auto joined Defendants' "No Charge Back Program."

43.     Chalfant Corp. met all of its obligations under the "No Charge Back Program".

44.     At or around the time additional dealerships were added to the "No Charge Back Program", the Zurich Defendants knew or should have known they never properly created a Refund Account and the "No Charge Back Program" was insolvent and was not being managed.

45.     Zurich Defendants knew or should have known the "No Charge Back Program" was insolvent because the Zurich Defendants kept and had the expertise to interpret detailed data showing, among other things, (1) extended warranties sold and cancelled at the Edmark/Chalfant Dealerships, (2) the total of remitted amounts allocated for the Refund Account, (3) the amount of the Edmark/Chalfant Dealerships' profit per extended warranty sold,  and (4) the cost payable to Defendants for each extended warranty sold.  The Zurich Defendants knew or should have known that the "No Charge Back Program" was insolvent because the Zurich Defendants were

able to calculate the anticipated future liability for the Edmark/Chalfant Dealerships for charge backs.

46.     The Zurich Defendants knew or should have known that the "No Charge Back Program" was not being properly managed because the Zurich Defendants never set up a Refund Account and did not have any analysis performed relating to the program by personnel in its underwriting or actuarial departments.

47.     Zurich Defendants did not disclose these facts to Chalfant Corp. or to Edmark Auto.

48.     After all the Edmark/Chalfant Dealerships were participating in the "No Charge Back Program", the Zurich Defendants continued to breach their obligations.

49.      Under the terms of its "No Charge Back Program",  the Zurich Defendants were to track the remitted funds, ensure the "No Charge Back Program" was solvent, and adjust the amounts to be remitted based on its ongoing analysis of anticipated future "charge backs."

50.     The Zurich Defendants failed to meet their obligations under the "No Charge Back Program".  Among other things, Defendants (1) failed to properly monitor the "No Charge Back Program", (2) caused the "No Charge Back Program" to become insolvent in that the account funds did not accurately reflect the Edmark/Chalfant Dealerships' future liabilities, and (3) failed to adjust the amounts to be remitted to cover future anticipated liabilities.  Defendants eventually caused the "No Charge Back Program" to go into a deficit.

51.     From the commencement of the "No Charge Back Program", Defendants did not have anyone, much less qualified personnel, manage the "No Charge Back Program".  The Zurich Defendants never set up a Refund Account.

52.     The Zurich Defendants failed to perform a solvency analysis regarding whether the funds being paid into the "No Charge Back Program" were sufficient to cover anticipated

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 9

liabilities.  On the two occasions in approximately 2009 and 2010 the Zurich Defendants purported to review anticipated liabilities.   However,  the Zurich Defendants incorrectly performed the analysis and never disclosed their analysis, faulty or not.

53.     The Zurich Defendants did not regularly perform future liability calculations. From at least 1996 through late 2014, Zurich Defendants did not assess whether the amount to be remitted to the "No Charge Back Program" per extended warranty sold would cover the Edmark/Chalfant Dealerships' anticipated future liability.

54.     In breach of their obligations, Zurich Defendants failed to take any steps to correct these failures or their ongoing mismanagement of the "No Charge Back Program."

55.     The Zurich Defendants failed to disclose and actively concealed their mismanagement of the "No Charge Back Program" and the Refund Account while simultaneously seeking new and additional business from the Edmark/Chalfant Dealerships. Zurich Defendants sought to (1) renew insurance policies with the Edmark/Chalfant Dealerships, (2) commence or renew the Edmark/Chalfant Dealerships participation in Zurich Defendants' Finance and Insurance product programs, and (3) participate in a profit-sharing, reinsurance program with Defendants.  To conceal their mismanagement, Zurich Defendants continued to disburse funds to cover "charge backs" to the Edmark/Chalfant Dealerships even though there were not any funds available in the Refund Account.

56.     On an ongoing basis, the Zurich Defendants misrepresented facts, including, but not limited to the following:

            a)     the Zurich Defendants would implement and properly manage a "No
                   Charge Back Program",

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 10

b)      the Zurich Defendants had a solvent "No Charge Back Program" in place which was ensuring that the Edmark/Chalfant Dealerships would not have to pay additional funds to cover anticipated "charge backs", and

c)      the Edmark/Chalfant Dealerships were receiving a significant benefit by being involved in the "No Charge Back Program".

57.      In or around May of 2015, the Edmark/Chalfant Dealerships obtained financial information regarding the "No Charge Back Program".  From this information, the Edmark/Chalfant Dealerships learned Zurich Defendants had misrepresented and concealed their ongoing mismanagement and other breaches of duty related to the "No Charge Back Program", had caused the Refund Account to have a current deficiency in excess of $230,000, and had created liability for the Edmark/Chalfant Dealerships for millions of dollars in anticipated future "charge backs."

58.      In April or May  2015, Defendants sent letters purporting to terminate the "No Charge Back Program" effective May 15, 2015.  A letter dated April 21, 2015  stated "[s]ince the program's refund account is in a significant deficit position, no funds exist from which to make any distribution.  Zurich fully reserves its right to pursue the deficit balance in the account."

59.      Zurich Defendants' wrongful conduct has caused the Edmark/Chalfant Dealerships to suffer significant financial damage.

**FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**
(**UNIVERSAL**)

60.      The Edmark/Chalfant Dealerships incorporate by reference each of the allegations in paragraphs 1 through 59.

61.      The Edmark/Chalfant Dealerships and Universal entered a written agreement relating to the "No Charge Back Program."

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 11

62.     The Edmark/Chalfant Dealerships have met all of their obligations under the contract.

63.     Universal breached its duties under the contract.

64.     The Edmark/Chalfant Dealerships were damaged in an amount in excess of the jurisdictional amount on account of the breach, and seek recovery of all of their damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)**
**(UNIVERSAL)**

65.     The Edmark/Chalfant Dealerships incorporate by reference each of the allegations in paragraphs 1 through 64.

66.     The Edmark/Chalfant Dealerships and Universal entered a written agreement relating to the "No Charge Back Program."

67.     The agreement created duties of good faith and fair dealing on the part of Universal to use commercially reasonable efforts to manage the "No Charge Back Program" and to anticipate and adjust the amount remitted for each sale of extended warranties create sufficient funds in the Refund Account.

68.     The No Charge Back Agreement also created duties of good faith and fair dealing on the part of Universal in executing its obligations with regard to management of the account and monitoring funds.  More specifically, and without limitation, these implied covenants and duties obligated Universal to do the following:

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 12

a)      provide complete and accurate data regarding the "No Charge Back Program";

b)      manage the "No Charge Back Program" in a reasonable manner;

c)      analyze the anticipated future liability on an ongoing basis;

d)      make periodic changes to the remittance amount from each extended warranty based on Universal's ongoing analysis of future liability;

e)      notify the Edmark/Chalfant Dealerships when the "No Charge Back Program" was insolvent; and

f)      notify the Edmark/Chalfant Dealerships when the "No Charge Back Program" was in deficit.

69.     Universal breached these implied obligations.

70.     As a result of Universal's breach of the implied covenant of good faith and fair dealing, the Edmark/Chalfant Dealerships were damaged in an amount in excess of the jurisdictional amount and seek recovery of all of their damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (FRAUD/FRAUDULENT CONCEALMENT)
### (ZURICH AND UNIVERSAL)

71.     The Edmark/Chalfant Dealerships incorporate by reference each of the allegations in paragraphs 1 through 70.

72.     To induce the Edmark/Chalfant Dealerships to (1) enter into the "No Charge Back Program", (2) continue participating in the "No Charge Back Program", and (3) add additional dealerships to the "No Charge Back Program", (4) commence or renew the Edmark/Chalfant Dealerships' participation in Zurich Defendants' F&I Products programs, and (5) buy other insurance products from Zurich, Zurich Defendants made fraudulent misrepresentations and fraudulently concealed material facts, including but not limited to the concealments set forth below.

73.     The Zurich Defendants misrepresented facts, including, but not limited to the following:

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 13

a)      the Zurich Defendants would implement and properly manage a "No Charge Back Program",

b)      the Zurich Defendants had a solvent "No Charge Back Program" in place which was ensuring that the Edmark/Chalfant Dealerships would not have to pay additional funds to cover anticipated "charge backs", and

c)      the Edmark/Chalfant Dealerships were receiving a significant benefit by being involved in the "No Charge Back Program".

74.      The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that the "No Charge Back Program" was not being managed so that future "charge backs" could be paid from the Refund Account.

75.      The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that Zurich Defendants did not have qualified personnel to manage the Refund Account, and that Defendants relied on customer service personnel to tally amounts remitted to the Refund Account and performed no solvency analysis on the Refund Account on a regular basis.

76.      The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that Defendants did not perform future liability calculations on the Refund Account except when considering whether to add new dealerships to the "No Charge Back Program" in and around 2010.

77.      The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that from at least 1996 through late 2014, Defendants did not assess whether the amount to be remitted to the Refund Account per extended warranty sold would cover the Edmark/Chalfant Dealerships' anticipated future liability.

78.      The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that the Refund Account had been insolvent at least since 2006, if not earlier.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 14

79.     The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that, since at least 2011, the Refund Account has been in a deficit position.

80.     The Zurich Defendants concealed from the Edmark/Chalfant Dealership that there was not an actual "account" that was designated for the Refund Account.

81.     The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that Zurich was improperly aggregating funds obtained from Edmark Auto dealerships and from Chalfant Corp. dealerships in the "No Charge Back Program."

82.     The Edmark/Chalfant Dealerships believed that the Zurich Defendants would implement and properly manage a "No Charge Back Program", had a solvent "No Charge Back Program" in place which was ensuring that the Edmark/Chalfant Dealerships would not have to pay additional funds to cover anticipated "charge backs", the Edmark/Chalfant Dealerships were receiving a significant benefit by being involved in the "No Charge Back Program", were actively managing the Refund Account using qualified personnel, the "No Charge Back Program" was solvent, the Refund Account was not in a deficit position, the anticipated liability for future charge backs was being analyzed by Zurich Defendants on an ongoing basis, and that sufficient funds were being remitted from the sale of each extended warranty, there was an actual account for the "Refund Account", and the funds from the Edmark Auto dealerships and Chalfant Corp. dealerships were being properly segregated.

83.     The Zurich Defendants concealed facts from the Edmark/Chalfant Dealerships that were contrary to what the Edmark/Chalfant Dealerships understood and believed.

84.     The facts Zurich Defendants misrepresented and concealed were material.

85.     The Zurich Defendants either knowingly misrepresented and concealed material facts or should have known they were misrepresenting and concealing material facts from the Edmark/Chalfant Dealerships.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 15

86.     The Edmark/Chalfant Dealerships were unaware of the misrepresentations and concealment.

87.     The Zurich Defendants intended for the Edmark/Chalfant Dealerships to rely upon the misrepresentations and concealment in (1) renewing insurance policies with Zurich Defendants, (2) commencing or renewing the Edmark/Chalfant Dealerships' participation in Zurich Defendants' F&I Products programs, (3) participating in a profit-sharing, reinsurance program with Defendants, (4) continuing to participate in the "No Charge Back Program", and (5) adding additional dealerships to the "No Charge Back Program".

88.     The Edmark/Chalfant Dealerships did rely upon the concealment in (1) renewing insurance policies with Zurich Defendants, (2) commencing or renewing the Edmark/Chalfant Dealerships' participation in Zurich Defendants' F&I Products programs, (3) participating in a profit-sharing, reinsurance program with Defendants, (4) continuing to participate in the "No Charge Back Program", and (5) adding additional dealerships to the "No Charge Back Program".

89.     The Edmark/Chalfant Dealerships' reliance on the concealment was reasonable under the circumstances.

90.     The Edmark/Chalfant Dealerships suffered damages in excess of the jurisdictional amount proximately caused by reliance on the concealment.

91.     The nature and extent of the damages to the Edmark/Chalfant Dealerships, and the amount thereof, will be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (UNFAIR BUSINESS PRACTICES)
### (ZURICH AND UNIVERSAL)

92.     The Edmark/Chalfant Dealerships incorporate by reference each of the allegations in paragraphs 1 through 91.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 16

93.     The Edmark/Chalfant Dealerships and Zurich Defendants are in a contractual relationship relating to the "No Charge Back Program" and are in a contractual relationship relating to Zurich Defendants' F&I Products programs.

94.     The Edmark/Chalfant Dealerships purchased or leased services from Zurich Defendants pursuant to the contractual relationship relating to the "No Charge Back Program" and pursuant to the contractual relationship relating to Zurich Defendants' F&I Products programs.

95.     While in this contractual relationship, and in the conduct of trade or commerce, Defendants engaged in methods, acts, and practices unlawful under Idaho Code title 48, chapter 6.

96.     The Zurich Defendants (1) did not properly set up, implement or actively manage the "No Charge Back Program" so that future "charge backs" could be paid from a Refund Account, (2) did not analyze the anticipated future liability for future "charge backs" on an ongoing basis; and (3) did not analyze on an ongoing basis whether the amount being remitted from each sale of an extended warranty was sufficient to cover the costs of future "charge backs".

97.     The Zurich Defendants made misrepresentations and concealed from the Edmark/Chalfant Dealerships that the "No Charge Back Program" was properly in place and was not being managed so that future "charge backs" could be paid from the Refund Account.

98.     The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that Zurich Defendants did not have qualified personnel manage the "No Charge Back Program" or any Refund Account, and that Zurich Defendants relied on customer service personnel to tally amounts remitted to the Refund Account and performed no solvency analysis on the Refund Account on a regular basis.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 17

99.     The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that Zurich Defendants did not perform future liability calculations on the Refund Account except when considering whether to add new dealerships to the "No Charge Back Program" in and around 2010.

100.    The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that from at least 1996 through late 2014, Zurich Defendants did not assess whether the amount to be remitted to the Refund Account per extended warranty sold would cover the Edmark/Chalfant Dealerships' anticipated future liability.

101.    The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that the Refund Account had been insolvent at least since 2006.

102.    The Zurich Defendants concealed from the Edmark/Chalfant Dealerships that, since at least 2011, the Refund Account has been in a deficit position.

103.    The Zurich Defendants concealed the truth from the Edmark/Chalfant Dealerships.

104.    The facts misrepresented and concealed were material.

105.    The misrepresentations and concealments were made to induce the Edmark/Chalfant Dealerships to (1) renew insurance policies with Defendants, (2) commence or renew the Edmark/Chalfant Dealerships' participation in Zurich Defendants' F&I Products programs, (3) participate in a profit-sharing, reinsurance program with Defendants, (4) continue participating in the "No Charge Back Program", and (5) add additional dealerships to the "No Charge Back Program".

106.    The Zurich Defendants intended for the Edmark/Chalfant Dealerships to rely upon the misrepresentations and concealment in (1) renewing insurance policies with Zurich Defendants, (2) commencing or renewing the Edmark/Chalfant Dealerships' participation in

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 18

Zurich Defendants' F&I Products programs, (3) participating in a profit-sharing, reinsurance program with Zurich Defendants, (4) continuing to participate in the "No Charge Back Program", and (5) adding additional dealerships to the "No Charge Back Program".

107.    The Edmark/Chalfant Dealerships did rely upon the misrepresentations and concealment in (1) renewing insurance policies with Defendants, (2) commencing or renewing the Edmark/Chalfant Dealerships' participation in Zurich Defendants' F&I Products programs, (3) participating in a profit-sharing, reinsurance program with Defendants, (4) continuing to participate in the "No Charge Back Program", and (5) adding additional dealerships to the "No Charge Back Program".

108.    Zurich Defendants knew, or in the exercise of due care should have known, that Defendants engaged in unconscionable methods, acts, or practices in the conduct of trade or commerce, as provided in Idaho Code section 48-603C.

109.    Zurich Defendants' actions and practices are misleading, false, or deceptive.

110.    Zurich Defendants' conduct and pattern of conduct are outrageous and offensive to the public conscience.

111.    As a direct result of Zurich Defendants' wrongful acts and practices, the Edmark/Chalfant Dealerships have been damaged in excess of the jurisdictional amount, in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
#### (FIDUCIARY DUTY)
#### (Zurich and Universal)

112.    Edmark/Chalfant Dealerships incorporates by reference each of the allegations in paragraphs 1 through 111.

113.    As the managers of monies relating to the "No Charge Back Program" and the Refund Account held in trust for the Edmark/Chalfant Dealerships, and/or because of the Zurich

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 19

Defendants' dealings with the Edmark/Chalfant Dealerships, and/or because of the Edmark/Chalfant Dealerships' reliance upon the Zurich Defendants, and/or because of all other bases available under Idaho law, the Zurich Defendants owed the Edmark/Chalfant Dealerships fiduciary duties and obligations.

114.     Through the Zurich Defendants' conduct and actions as alleged , and according to proof, the Zurich Defendants breached fiduciary duties owed to the Edmark/Chalfant Dealerships.

115.     Because of the breaches, the Edmark/Chalfant Dealerships have been damaged in excess of the jurisdictional amount, in an amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**
(Zurich and Universal)

116.     Edmark/Chalfant Dealerships incorporate by reference each of the allegations in paragraphs 1 through 115.

117.     Edmark/Chalfant Dealerships benefitted the Zurich Defendants.

118.     Zurich Defendants accepted the benefit.

119.     Under the circumstances, it would be unjust for the Zurich Defendants to retain the benefit without the Zurich Defendants compensating the Edmark/Chalfant Group for the value of the benefit accepted by the Zurich Defendants.

120.     Zurich Defendants unjustly retained the entire benefit conferred upon it.

121.     Because of Zurich Defendants' unjust retention of the benefits, the Edmark/Chalfant Dealership has been proximately damaged in excess of the jurisdictional amount, in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### (FRAUD IN THE INDUCEMENT)
(Zurich and Universal)

122.    The Edmark/Chalfant Dealerships incorporate by reference each of the allegations in paragraphs 1 through 121.

123.    Zurich Defendants misrepresented to the Edmark/Chalfant Dealerships that (1) Zurich Defendants had a system and personnel in place to meet Zurich Defendants' obligations under the "No Charge Back Program", (2) Zurich Defendants intended to meet its obligations under the "No Charge Back Program", (3) the "No Charge Back Program" was being actively managed and monitored so that all anticipated future "charge backs" to a customer could be paid from the Refund Account, (3) the "No Charge Back Program" would be actively managed and monitored for the Edmark/Chalfant Dealerships benefit,  and (4) the Refund Account was solvent.

124.    Zurich Defendants' representations were false.

125.    Zurich Defendants concealed from the Edmark/Chalfant Dealerships that (1) Zurich Defendants had no adequate system and personnel in place to meet Zurich's obligations under the "No Charge Back Program", (2) Zurich Defendants never intended to meet its obligations under the "No Charge Back Program", (3) the "No Charge Back Program" was not being actively managed and monitored so that all anticipated future "charge backs" to a customer could be paid from the Refund Account, (3) Zurich Defendants never intended the "No Charge Back Program" would be actively managed and monitored for the Edmark/Chalfant Dealerships benefit, and (4) the Refund Account was insolvent.

126.    Zurich Defendants concealed the truth from the Edmark/Chalfant Dealerships.

127.    The misrepresentations and concealments were made to induce the Edmark/Chalfant Dealership to enter the "No Charge Back Program", to continue purchasing

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 21

other insurance from Zurich Defendants, to continue selling Zurich Defendants' extended

warranties, to continue participating in the "No Charge Back Program", and to add additional

dealerships within the Edmark/ Chalfant Dealerships to the "No Charge Back Program."

128.    The representation made that the "No Charge Back Program" was actively

managed and monitored was false.

129.    When the Zurich Defendants induced the Edmark Auto to sign the agreement for

the "No Charge Back Program" in 1996,  the Zurich Defendants knew or should have known that

it had no intent to implement the "No Charge Back Program" and that its representations were

false.

130.    When the Zurich Defendants  induced additional dealerships participate in the

"No Charge Back Program", the Zurich Defendants knew or should have known that the did not

have a bona fide "No Charge Back Program" in place, were not actively managing and

monitoring the funds and amounts being paid into the purported program, and that they had no

intent to implement a bona fide "No Charge Back Program" in the future and that its

representations were false.

131.    The Zurich Defendants' misrepresentations and concealments were material.

132.    The Zurich Defendants knew or should have known they were misrepresenting

and concealing material facts from the Edmark/Chalfant Dealerships

133.    The Zurich Defendants knew or should have known they were misrepresenting

and concealing material information.

134.    The Edmark/Chalfant Dealerships believed that the Zurich Defendants had a bona

fide "No Charge Back Program" in place and were actively managing the "No Charge Back

Program" and was ignorant of the falsity of Zurich's representations and concealments.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 22

135.    Zurich Defendants intended that the Edmark/Chalfant Dealerships rely on its misrepresentations and concealments.

136.    The Edmark/Chalfant Dealerships' reliance on the misrepresentation and concealments was reasonable under the circumstances.

137.    The Edmark has a right to rely on Zurich Defendants' misrepresentations and concealments.

138.    The Edmark/Chalfant Dealership Edmark/Chalfant Dealership has been proximately damaged in excess of the jurisdictional amount, in an amount to be proven at trial.

## ATTORNEY'S FEES

139.    Because of the unlawful actions of Zurich Defendants, the Edmark/Chalfant Dealerships had to retain the services of Holland & Hart, LLP to pursue this litigation.  The Edmark/Chalfant Dealerships has agreed to pay their counsel's reasonable attorney's fees, which the Edmark/Chalfant Dealerships may recover from Zurich Defendants under Idaho Code §§ 48-608 and 12-120.  If judgment is obtained by default, a reasonable attorney fee is $20,000.00.

## DEMAND FOR TRIAL BY JURY

140.    The Edmark/Chalfant Dealerships respectfully demand a jury trial on all issues.

WHEREFORE, the Edmark/Chalfant Dealerships pray for these relief:

a)    Judgment against Zurich Defendants for all damages sustained because of the allegations outlined and any further damages, including interest, that the Edmark/Chalfant Dealerships may be entitled to by law.

b)    Award to the Edmark/Chalfant Dealerships punitive damages against Zurich Defendants.

c)    Award to the Edmark/Chalfant Dealerships of reasonable attorney's fees and costs involved in suing the Zurich Defendants.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 23

d)      Such other and further relief as the Court deems necessary, just, and proper.

DATED this 19th day of March, 2018.


                          HOLLAND & HART LLP

                          By    _/s/ Jennifer M. Jensen_____
                                Erik F. Stidham, of the firm
                                Kevin C. Braley
                                Jennifer M. Jensen
                                Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of March, 2018, I filed the foregoing electronically through the CM/ECF system, which caused these parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Richard H. Greener                    rgreener@greenerlaw.com
Christopher Burke                     cburke@greenerlaw.com
Slade Sokol                           ssokol@greenerlaw.com
GREENER BURKE SHOEMAKER
OBERRECHT P.A
950 W. Bannock Street, Suite 950
Boise, ID  83702
Telephone: (208) 319-2600
Facsimile: (208) 319-2601


*/s/ Jennifer M. Jensen*
Jennifer M. Jensen for HOLLAND & HART LLP

10348552_1

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** - 25