UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDMARK AUTO, INC., an Idaho corporation; and CHALFANT CORP., an Idaho corporation,<br><br><br>Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and UNIVERSAL UNDERWRITERS SERVICE CORPORATION, a Delaware Corporation,<br><br>Defendants. | Case No. 1:15-cv-00520-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is Plaintiffs' Motion for Attorney Fees. Dkt. 325. The

Motion is fully briefed and at issue. Plaintiffs seek $1,999,771.50 in attorneys'

fees. Defendants claim that (1) Plaintiffs have not proved their entitlement to fees

by failing to provide a claim-by-claim analysis, (2) even if Plaintiffs are entitled to

fees, not all claims qualify for statutory attorneys' fees, and (3) any award of fees

should be reduced by 20 percent due to excessive attorney time and unreasonable

duplication of effort, and because it was unreasonable for Plaintiffs to conduct a

**MEMORANDUM DECISION AND ORDER - 1**

mock trial, voir dire, and opening statements. The Court has reviewed the

submitted records and affidavits and has determined that oral arguments will not

significantly assist the decisional process. Therefore, the Court will not conduct a

hearing. For the reasons explained below, the Court will award Plaintiffs

$1,999,771.50 in attorneys' fees.

## BACKGROUND

Plaintiffs Edmark Auto, Inc. and Chalfant Corp. initiated suit against

Defendants Zurich, Inc. and Universal Underwrites Service Corp. after a nearly

two-decade long business relationship. Plaintiffs alleged unfair business practices,

breach of contract, breach of fiduciary duty, and fraud concerning a "No

Chargeback Program" in which Defendants promised to cover Plaintiffs'

"Chargebacks," or refunds to car-buying customers who canceled their vehicle

services.

Following intensive discovery and extensive motion practices, the case

proceeded to trial where the jury returned verdicts in Plaintiffs' favor. Dkts. 321,

322, 323. On July 24, 2019, Plaintiffs filed the pending motion seeking attorneys'

fees.

## LEGAL STANDARD

Jurisdiction in this suit is based on diversity of citizenship under 28 U.S.C.

§ 1332, therefore the right to attorney fees and the method of calculating the fees is governed by state law. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). In Idaho, attorneys' fees may be awarded if authorized by either contract or statute. Idaho R. Civ. P. 54(e)(1) (authorizing the award of reasonable attorney fees to the prevailing party in a civil action when provided for by statute or contract); *see Stibal v. Fano*, 157 Idaho 428, 435 (Idaho 2014) ("Attorney fees may be awarded if authorized by statute or contract."). Here, Plaintiffs seek attorneys' fees under Idaho Code §12-120(3), Idaho Code § 48-608, Fed. R. Civ. P. 54, and Dist. Local R. 54.2.

### 1) Idaho Code § 12-120(3)

Idaho Code § 12-120(3) provides, "In any civil action to recover . . . in any commercial transaction . . . the prevailing party shall be allowed a reasonable attorney's fees." *See Clement v. Franklin Inv. Group, Ltd*. 689 F. Supp. 1575, 1577 (D. Idaho 1988) ("Idaho Code § 12-120 is mandatory in its nature.").

"Commercial transaction" is broadly defined to encompass "commercial in the ordinary sense of the word." *Id*. at 1576; *see also* Idaho Code § 12-120(3) ("The term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes."). For a prevailing party to avail itself of § 12-120(3), the critical test is "whether the commercial transaction

**MEMORANDUM DECISION AND ORDER - 3**

comprises the gravamen of the lawsuit." *Great Plains Equip. v. Northwest Pipeline Corp.*, 136 Idaho 466, 471(Idaho 2001). Importantly, the commercial transaction "must be integral to the claim and constitute a basis on which the party is attempting to recover." *Id*. Section 12-120(3) may be invoked even when eligible claims are combined with other theories that would not have triggered its application, as long as the commercial transaction remains integral to the claim and constitutes the basis of recovery. *See Brooks v. Gigray Ranches*, 128 Idaho 72, 79 (Idaho 1996).

### 2) Idaho Code § 48-608

The Idaho Consumer Protection Act (ICPA) provides, "In any action brought by a person under this section, the court shall award . . . reasonable attorney's fees to the plaintiff if he prevails." Idaho Code § 48-608(5).

### 3) Idaho R. Civ. P. 54(e)(3)

If the Court grants attorneys' fees, it must consider the factors enumerated in Idaho R. Civ. P. 54(e)(3):

(A) the time and labor required;

(B) the novelty and difficulty of the questions;

(C) the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;

(D) the prevailing charges for like work;

(E) whether the fee is fixed or contingent;

(F) the time limitations imposed by the client or the circumstances of the case;

(G) the amount involved and the results obtained;

(H) the undesirability of the case;

(I) the nature and length of the professional relationship with the client;

(J) awards in similar cases;

(K) the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;

(L) any other factor which the court deems appropriate in the particular case.

The "trial court is not required to make 'specific findings demonstrating how it employed any of the factors in Rule 54(e)(3),' [but] it is required to consider those factors when determining the amount of the fees to award." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 769 (Idaho 2004) (citation omitted). The reasonableness of an attorneys' fee award is based on the consideration of the Rule 54(e)(3) factors. *Id*.

## ANALYSIS

### A.     Idaho Code § 12-120(3)

Defendants do not dispute that Plaintiffs are prevailing parties under both

Idaho Code § 12-120(3) and Idaho Code § 48-608. *See* Dkt. 376 at 2. Rather, they

claim that Plaintiffs failed to show their entitlement to fees by neglecting to

provide a claim-by-claim analysis separating their consumer protection and

contract claims from their fiduciary duty, fraud, and punitive damage claims. The

Court disagrees. While it is true that the Court is required to "analyze the gravamen

claim by claim," Plaintiffs are not required to separate claims when each cause of

action stems from the same commercial transaction. *See Sims v. Jacobson*, 157

Idaho 980, 985 (Idaho 2015); *see also Winn v. Amerititle*, 2010 WL 4904676, *2

(D. Idaho 2010).  Here, each of Plaintiffs' causes of actions arose from

Defendants' failure to meet their obligations as to the No Chargeback Program,

which clearly meets the plain definition of a commercial transaction and

constitutes the gravamen of the lawsuit. Dkt. 147.

Thus, Defendants' claim that the Court should not award fees for Plaintiffs'

breach of fiduciary duty, fraud, and punitive damage claims fails. The Idaho

Supreme Court has explicitly held that § 12-120(3) does not prohibit a fee award

for a commercial transaction that also involves tortious conduct. *Blimka v. My Web

Wholesaler, LLC*, 143 Idaho 723, 728 (Idaho 2007).

**MEMORANDUM DECISION AND ORDER - 6**

Still, Defendants claim that Plaintiffs' theory of recovery on their breach of fiduciary duty, fraud, and punitive damage claims is immaterial to the commercial transaction for two reasons: 1) Plaintiffs' sought disgorgement and not "recover[y]" under § 12-120(3), and 2) the special relationship between the parties minimized the commercial nature between them, rendering their breach of fiduciary duty incompatible with a commercial transaction. Neither reason has merit.

### 1) Damages Sought

Defendants claim that, because Plaintiffs sought disgorgement and punitive damages, their purpose was to punish Defendants instead of recover damages sustained because of Defendants' fraudulent conduct. *See* Dkt. 376 at 7 ("[I]t is clear that the theory for awarding disgorgement turns not on the commercial transaction but rather on proof of Defendants' profits and principles of equity."). According to Defendants, these damages are incompatible with recovering from the commercial transaction here. This is a tortured interpretation of commercial transaction, and is unsupported by both law and fact. Plaintiffs' successfully established that defendants' misrepresentations and mismanagement with respect to the No Chargeback Program was the genesis of Plaintiffs' claims of tortious conduct. *See* Dkts. 321-323, 373. Put another way, without the Program, Plaintiffs

MEMORANDUM DECISION AND ORDER - 7

would be unable to assert the tortious conduct claims on which they prevailed. *Cf.*

*Dickinson Frozen Foods, Inc. v. J.R. Simplot Co*., 164 Idaho 669, 687 (Idaho 2019)

(finding that plaintiff was not entitled to fees based on defamation allegations that

were unrelated to the business contract).

Furthermore, Plaintiffs' established that they would have been better off

with one of Defendants' competitors. *See* Dkt. 373 at 14. Given that their loss was

difficult to quantify, Plaintiffs' measured their loss through Defendants' profits.

*See Jordan v. Hunter*, 124 Idaho 899, 908 (Ct. App. 1993) (proof of unjust profits

satisfies damage elements for fraud). Indeed, by virtue of alleging tortious conduct,

punitive damages were authorized by statute. *See* Idaho Code § 6-1604.

Accordingly, the Court does not accept Defendants' attempt to untether the breach

of fiduciary duty, fraud, and punitive damages claim from the commercial

transaction based on the type of damages Plaintiffs sought. *See Blimka*, 143 Idaho

at 728.

### 2)  Fiduciary Relationship

Defendants further claim that the fiduciary relationship between the parties

minimized the commercial nature between them because it distinguished their

dealings from arms-length transactions. However, no basis exists to assert that a

fiduciary relationship undermines the commercial relationship or renders the

commercial transactions distinct here. In fact, precedent indicates otherwise. *See*

*Prehn v. Hodge*, 161 Idaho 321, 331 (Idaho 2016) (district court did not err in

awarding attorney's fees based on breach of fiduciary duty). As explained, the

genesis of the lawsuit was the No Chargeback Program, which fits squarely within

the definition of a commercial transaction.

Furthermore, in finding as a matter of law that the Defendants owed

Plaintiffs a fiduciary duty in administering the No Chargeback Program, the

Court's ruling supports the determination that the duty arose, and is not separable

from, the commercial transactions. *See* Dkt. 373 at 8-10. The Court instructed the

jury that the scope of the fiduciary duty amounted to administering the No

Chargeback Program and subsequent agreements. *Id*. at 17. In fact, the Special

Verdict Form clearly asks the jury to find whether Defendants fraudulently induced

Plaintiffs to enter into contracts. *See* Dkt. 321 at 1-2. As such, Plaintiffs are entitled

to recover reasonable attorneys' fees under § 12-120(3).

### B.    Idaho Code § 48-608

As noted, Defendants do not dispute that Plaintiffs are prevailing parties.

"[A] party who invokes the protection of the ICPA and prevails is entitled to

reasonable attorney fees based on an application of the prevailing party analysis

from [Idaho R. Civ. P.] 54(d)(1)(B)." *Duspiva v. Fillmore*, 154 Idaho 27, 37 (Idaho

2013). Accordingly, the Court finds that plaintiffs are entitled to fees on this statutory basis as well.

### C.      Reasonableness of Fees

Defendants claim that Plaintiffs incorrectly rely on the "lodestar" approach in determining reasonableness of attorneys' fees, but do not deny that Plaintiffs' affidavit adequately addresses the factors outlined in Rule 54(e)(3). Dkt. 376 at 10 ("Defendants are not here to argue that Plaintiffs thorough affidavit fails to address the criteria outlined in Idaho Rule of Civil Procedure 54(e)(3)."). *See Hackett v. Streeter*, 109 Idaho 261, 264 (Ct. App. 1985) ("Rule 54(e)(3) requires the trial court to consider the enumerated factors."). The Court has considered the Rule 54(e)(3) factors along with the records submitted and finds that Plaintiffs' requested fees are reasonable in light of the time and labor required in this vigorously contested lawsuit.

### 1) Hourly Rates

Reasonable hourly rates "are to be calculated according to the prevailing market rates in the relevant legal community." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The Court has further considered the experience, skill, and reputation of Plaintiffs' attorneys. *See Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996). Defendants

MEMORANDUM DECISION AND ORDER - 10

concede that Plaintiffs' rates are reasonable, and the Court agrees in light of its

familiarity with the rates of Holland & Hart timekeepers. Dkt. 376 at 12. *See*

*LaPeter v. Can. Life Ins. Of Am.*, 2007 U.S. Dist. LEXIS 89097, *4 (D. Idaho

2007) ("It has [] been this Court's experience that attorneys at regional firms, such

as Holland & Hart, charge hourly rates at or near, but not above, the high end of

acceptable rates for the Boise area.").

### 2)  Defendants' Requested Reduction

While Defendants do not dispute the hourly rate, they claim that the number

of hours expended were excessive. Specifically, they claim that overstaffing

resulted in excessive attorney time and duplicative effort and that Plaintiffs

expended unnecessary hours in preparing for and conducting a mock trial, voir

dire, and opening statements. As such, Defendants ask to reduce Plaintiffs'

requested fee award by 20 percent.

### a.  Number of Hours and Staffing

Defendants claim that Plaintiffs overstaffed the litigation, resulting in

unreasonable time and labor invested. In support, they point to a 23 percent

difference in hours billed. *See* Dkt. 376 at 13. However, a disparity in the number

of hours expended between Plaintiffs and Defendants does not necessarily mean

Plaintiffs' excessively staffed their litigation or that hours expended were

**MEMORANDUM DECISION AND ORDER - 11**

unreasonable. *See Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (noting that many factors can cause a prevailing party to spend more time on matters, but opposing counsel's billing records are a "useful guide" in evaluating the reasonableness of claimed time). The Court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, Defendants were responsible for evasive discovery practices and the production of unusual documents. *See* Ex. B, Dkt. 111; Stidham Decl., Dkt. 325-2 at 2-3. This case also involved complex and extensive motion practice. *See* Stidham Decl. at 2, 4. Records submitted indicate that Plaintiffs staffed more attorneys on depositions that were document-intensive; and even then, the hours were not always charged. *See* Dkt. 325-3 at 74. *See Reed*, 388 F.3d at 1286-1287 (courts must exercise discretion considering the circumstances of the individual case in determining whether unnecessary duplication occurred). Given that plaintiffs prevailed on all fronts, the modest 23 percent difference in hours tends to highlight their efficiency and undermines the Defendants' claim that overstaffing occurred. *Id*. at 1287. Accordingly, the Court will not reduce the award based on this claim.

**MEMORANDUM DECISION AND ORDER - 12**

### b. Mock Trial

Defendants claim that Plaintiffs unreasonably spent 387 hours preparing for and conducting a mock trial, voir dire, and opening statements. The Court has discretion to decide whether this was a reasonable expense under the circumstances. *Reed*, 388 F.3d at 1286-1287.  Considering the complexity of the case, counterclaims, and the relationship between the parties, the Court finds that the mock trial was a reasonable expense. Indeed, given again that Plaintiffs ultimately prevailed, the Court cannot say that the mock trial was not a contributing factor in the outcome of the case. As such, the Court will defer to the experience of counsel and will not reduce the award based on this claim as well. *Id*. In so concluding, the Court does not mean to intimate that mock trials are necessary or recoverable expenses in more routine litigation.   But, with the amounts at stake, the complexity of the issues, and the quality of counsel on both sides, I must conclude that it was a reasonable expenditure here.

### CONCLUSION

Accordingly, in considering all Rule 54(e)(3) factors, the Court concludes that Plaintiffs' requested fees of $1,999,771.50 is reasonable.

### ORDER

**IT IS ORDERED that** Plaintiff's Motion for Attorney Fees and Costs (Dkt.

**MEMORANDUM DECISION AND ORDER - 13**

325) is **GRANTED** in the amount of $1,999,771.50.

DATED: March 1, 2021

B. Lynn Winmill
U.S. District Court Judge